# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| ANDREW J. CHERRONE, JR., ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | CAUSE NO. 3:10-CV-133-TS |
| ) | |
| SUPERINTENDENT, ) | |
| ) | |
| Respondent. ) | |

## OPINION AND ORDER

Andrew J. Cherrone, Jr., a prisoner proceeding pro se, is serving a 65-year sentence for murder and attempted robbery. *State v. Cherrone,* 71D04-9806-CF-0238. He filed this Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. [ECF No. 1.] The Respondent argues that the Petition should be denied because Cherrone's claims are not cognizable, are procedurally defaulted, or fail on the merits. [ECF No. 12.]

## FACTS

In deciding the Petition, the Court must presume the facts set forth by the state courts are correct. 28 U.S.C. § 2254(e)(1). It is Cherrone's burden to rebut this presumption with clear and convincing evidence. *Id*. On direct appeal, the Indiana Supreme Court summarized the facts underlying Cherrone's offenses as follows:

> On the evening of May 24, 1998, Cherrone, sixteen, was drinking alcohol with his friends Roy McCarthy, fourteen, and Justin Maike, fifteen. His thirteen-year-old girlfriend Margaret Deskovich was also present but not drinking. Late that evening the group went to a convenience store to get something to eat, but had no money. Cherrone told Maike, "We should go rob Mr. Shultz," a ninety-year-old man who lived nearby. Cherrone then said he was not serious, but he and Maike walked to Shultz's house. Deskovich and McCarthy remained at the convenience store.

> Cherrone and Maike found lights on at Shultz's house and knocked on the door. When Shultz answered the knock, Cherrone asked if he could use the telephone. Shultz retrieved a cordless phone and handed it to Cherrone, who pretended to call someone. Because Maike's face was covered by his shirt, Shultz asked him if he was a boy or a girl. Maike then showed his face to Shultz. After a few seconds of silence, Cherrone "jumped in the door" at Shultz and began beating him with the cordless phone. Maike screamed at Cherrone to stop and then ran back to the convenience store. Cherrone ultimately stabbed Shultz in the neck with a pen. Shultz died as a result of "cranial blunt trauma . . . to the head and brain cavity as well as a stab wound to the neck."
>
> Cherrone then went with the others to Deskovich's house where he told Maike and McCarthy to burn his clothes. En route he discarded Shultz's cordless phone. Cherrone told Maike and McCarthy not to tell anyone about the crime "because if he went to prison, his family would get [them]." While Maike and McCarthy were burning the clothes, Cherrone told Deskovich that he had beaten Shultz over the head with the phone and stabbed him in the neck with a pen. Nearly three weeks later, Cherrone confessed to police.
>
> Cherrone was charged with murder, attempted robbery as a Class A felony, and felony murder. A jury found him guilty of all three counts, and trial court entered judgment of conviction only for murder and attempted robbery. Cherrone was sentenced to maximum consecutive terms totaling 115 years imprisonment.

*Cherrone v. State*, 726 N.E.2d 251, 253 (Ind. 2000).

On direct appeal, Cherrone argued that the trial court erred in admitting his videotaped confession; that there was insufficient evidence to support the attempted robbery conviction; and that his sentence was manifestly unreasonable under state law. *Id.* at 253–57. The Indiana Supreme Court found Cherrone's consecutive sentences excessive in light of his age at the time of the offense, and remanded with instructions for the court to impose concurrent sentences. *Id.* at 257. The court affirmed Cherrone's conviction in all other respects. *Id.*

In January 2001, Cherrone filed a petition for post-conviction relief with the state trial court. [ECF No. 11-7.] After lengthy proceedings, which included an appearance and subsequent withdrawal by the public defender's office, an unsuccessful interlocutory appeal by Cherrone of

the trial court's discovery rulings, and various amendments to the petition, the trial court denied the petition on June 9, 2009. [ECF No. 1-1 at 14–19; ECF No. 11-1 at 9.] Cherrone filed a motion to "correct errors" on July 2, 2009, which the trial court denied on February 4, 2010. [ECF No. 11-1 at 9.] Cherrone did not file an appeal of the trial court's order denying the petition or the order denying the motion to correct errors. [*See id.*]

In April 2010, Cherrone filed this federal petition raising the following claims: (1) the trial court erred in admitting his confession; (2) there was insufficient evidence for the jury to convict on the attempted robbery charge; (3) his trial counsel was ineffective; and (4) the trial court abused its discretion in imposing his sentence. [ECF No. 1.]

## ANALYSIS

Cherrone's Petition is governed by the provisions of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See Lindh v. Murphy*, 521 U.S. 320, 336 (1997). AEDPA allows a district court to issue a writ of habeas corpus on behalf of a person in custody pursuant to a state court judgment "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The Court can grant an application for habeas relief if it meets the requirements of 28 U.S.C. § 2254(d), which provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under this deferential standard, a federal habeas court must "attend closely" to the decisions of state courts and "give them full effect when their findings and judgments are consistent with federal law." *Williams v. Taylor*, 529 U.S. 362, 383 (2000). A state court decision is "contrary to" federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court or reaches an opposite result in a case involving facts materially indistinguishable from relevant Supreme Court precedent. *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal court may grant habeas relief under the "unreasonable application" clause if the state court identifies the correct legal principle from Supreme Court precedent but unreasonably applies that principle to the facts of the petitioner's case. *Wiggins v. Smith,* 539 U.S. 510, 520 (2003). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be "objectively unreasonable." *Id.* "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

Before considering the merits of a habeas petition, the Court must ensure that the petitioner has exhausted all available state remedies. 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004). The exhaustion requirement is premised on concerns of comity, as the state courts must be given the first opportunity to address and correct violations of their prisoner's federal rights. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Perruquet v. Briley*, 390 F.3d 505, 514 (7th Cir. 2004). For that opportunity to be meaningful, the petitioner must fairly present his constitutional claims in one complete round of state review.

4

*Baldwin v. Reese*, 541 U.S. 27, 30–31 (2004); *Boerckel*, 526 U.S. at 845. To do so the petitioner must present the substance of his claim to the state court by "articulating both the operative facts and applicable law" that entitles him to relief. *Johnson v. Hulett*, 574 F.3d 428, 431 (7th Cir. 2009). The companion procedural default doctrine, also rooted in comity concerns, precludes the Court from reaching the merits of a claim when: (1) the claim was presented to the state courts and was denied on the basis of an adequate and independent state procedural ground; or (2) the claim was not presented to the state courts and it is clear those courts would now find the claim procedurally barred under state law. *Coleman v. Thompson*, 501 U.S. 722, 735 (1991); *Perruquet*, 390 F.3d at 514.

A habeas petitioner can overcome a procedural default by showing cause for failing to properly exhaust a claim in state court and a resulting prejudice. *Wainwright v. Sykes*, 433 U.S. 72, 90 (1977). Cause sufficient to excuse procedural default is defined as "some objective factor external to the defense" which prevented a petitioner from pursuing his constitutional claim in state court. *Murray v. Carrier*, 477 U.S. 478, 492 (1986). A habeas petitioner can also overcome a procedural default by establishing that the Court's refusal to consider a defaulted claim would result in a fundamental miscarriage of justice. *House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman*, 501 U.S. at 750. Under this narrow exception, the petitioner must establish that "a constitutional violation has resulted in the conviction of one who is actually innocent of the crime." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

A.      **Admission of Confession**

In his first claim, Cherrone asserts that his videotaped confession should not have been admitted into evidence because he was not given an opportunity to consult with a custodial parent prior to confessing. [ECF No. 1 at 5.] The record shows that Cherrone was given an opportunity to consult with his father, Andrew Cherrone, Sr., prior to speaking to police and making his confession, but Cherrone claims that this consultation was inadequate because his father was not his "custodial" parent at the time.[1] *See Cherrone*, 726 N.E.2d at 254.

It is apparent that Cherrone's claim is premised on Indiana law, as Indiana law imposes an affirmative obligation on police to give juveniles an opportunity to consult with a custodial parent or guardian prior to questioning. *See* Ind. Code § 31-32-5-1; *Cherrone*, 726 N.E.2d at 255. There is no such requirement under federal constitutional law. Instead, whether a juvenile's confession is considered voluntary for purposes of the Fifth Amendment depends on the "totality of the circumstances," which is the same standard that applies to cases involving adults. *See Fare v. Michael C.*, 442 U.S. 707, 724–25 (1979). Although this test requires inquiry into the juvenile's age, experience, education, and intelligence, the Supreme Court has declined to impose any special procedural requirements for obtaining a juvenile's confession. *See id.* at 725 ("We discern no persuasive reasons why any other approach is required where the question is whether a juvenile has waived his rights, as opposed to whether an adult has done so.").

---

[1] The record shows that Cherrone was picked up by police for questioning and remained with them voluntarily while the police unsuccessfully attempted to locate his mother, with whom he was living at the time, and then telephoned his father at work and waited for him to arrive at the station. *Cherrone*, 726 N.E.2d at 254. After Cherrone's father arrived, Cherrone spoke with him in private for about 15 minutes before beginning the interview with police. *Id.* Before initiating questioning, police advised both Cherrone and his father that they wanted to discuss Cherrone's knowledge of Shultz's murder. *Id.* The police also read aloud a waiver of rights form, which Cherrone and his father both signed. *Id.*

Essentially Cherrone is claiming a technical violation of the Indiana statute, and federal habeas relief cannot be granted for violations of state law. *Estelle v. McQuire*, 502 U.S. 62, 67–68 (1991). Accordingly, Cherrone's claim is not cognizable in this proceeding.

In his traverse, Cherrone asserts that his claim is based on federal law, without clearly explaining how his federal rights were violated in connection with the admission of his confession. [*See* ECF No. 28-1 at 7–8.] Even if Cherrone's Petition can be read to assert a federal claim, he did not exhaust any such claim in the state proceedings. Although he raised a claim pertaining to his confession on direct appeal, that claim was based entirely on state law. [*See* ECF No. 11-3 at 13–19.] To properly exhaust, a petitioner must alert the state court to both the operative facts and the controlling legal principles governing his claim. *Johnson*, 574 F.3d at 431. This includes alerting the state court to the "federal nature" of the claim. *Baldwin*, 541 U.S. at 33. Cherrone did not do that here. Additionally, he raised a different set of facts in connection with this claim, asserting that the consultation with his father was inadequate because it occurred before he was given an advisement of rights. *Cherrone*, 726 N.E.2d at 255. Because Cherrone did not raise a federal claim based on the grounds he now asserts in his Petition in one complete round of state review, the claim is procedurally defaulted.

Cherrone appears to argue that the default should be excused because of his pro se status. [ECF No. 28-1 at 5–6.] This argument is somewhat confusing; the claim pertaining to Cherrone's confession was raised in a brief filed by counsel in the state proceedings. [*See* ECF No. 11-3 at 13–19.] Regardless, Cherrone's pro se status or lack of knowledge of the law cannot establish cause to excuse a procedural default. *See Smith v. McKee*, 598 F.3d 374, 385 (7th Cir.

2010) (petitioner's pro se status did not excuse his procedural default); *Harris v. McAdory*, 334 F.3d 665, 669 (7th Cir. 2003 (petitioner's pro se status, youth, lack of education, and illiteracy were not "external impediments" that would excuse his procedural default). Cherrone has not established cause to excuse his procedural default, and therefore the Court cannot reach the merits of this claim.

**B.     Sufficiency of the Evidence**

In his second claim, Cherrone asserts that there was insufficient evidence for the jury to convict him of attempted robbery. [ECF No. 1 at 7.] Under the Due Process Clause, a defendant cannot be convicted unless the state proves all the elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 316 (1979); *In re Winship*, 397 U.S. 358, 364 (1970). When considering a sufficiency of the evidence claim, the Court must determine "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319 (emphasis in original). The Court's role is limited, and the Court is not permitted to reweigh the evidence or substitute its judgment for that of the finder of fact. *Id.*; *Ford v. Ahitow*, 104 F.3d 926, 939 (7th Cir. 1997).

Cherrone argued the insufficient evidence claim on direct appeal. *Cherrone*, 726 N.E.2d at 255–56. In rejecting this claim, the Indiana Supreme Court applied a standard that was consistent with *Jackson,* which the court encapsulated as follows: "[W]e consider only the evidence and the reasonable inferences drawn therefrom that support the verdict. . . . We do not

8

reweigh the evidence or judge the credibility of witnesses and will affirm the conviction if there is probative evidence from which a reasonable jury could have found the defendant guilty beyond a reasonable doubt."[2] *Id.* (citations omitted). Applying that standard, the court determined that there was sufficient evidence to support the attempted robbery conviction. *Id.* This was not an unreasonable application of *Jackson*.

Under Indiana law, an individual commits robbery when he knowingly or intentionally takes property from another person by using or threatening force, or otherwise putting the person in fear. Ind. Code § 35-42-5-1. An individual is guilty of an attempted offense when he takes a substantial step toward the commission of a crime with the requisite mental state. Ind. Code § 35-41-5-1. Cherrone appears to argue that he could not be found guilty of attempted robbery because there was no evidence that he took or attempted to take anything from the victim. [ECF No. 1 at 7.] However, as indicated above, the state was only required to prove that Cherrone took a substantial step toward the commission of a robbery, not that he actually attempted to take something from the victim. See Ind. Code § 35-41-5-1.

Furthermore, the evidence amply supports the jury's determination that Cherrone took a substantial step toward committing a robbery. After he suggested to his friend that they "go rob" the victim, he went to the victim's home, knocked on the door, fabricated a reason to speak to the victim, and then "jumped" on and beat the victim. *Cherrone*, 726 N.E.2d at 253. Although the record does not show that Cherrone actually took or tried to take anything from Shultz's house

---

[2] A state court need not cite to or even be aware of Supreme Court precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

(other than the murder weapon), the jury could have reasonably concluded that he abandoned his plan to rob the victim and fled after the beating because he was concerned about getting caught. *See id.*

Cherrone's argument appears to be that there was no evidence of his intent to commit a robbery because he stated he was "joking" after suggesting to the group that they go rob Shultz. [ECF No. 1 at 7.] However, Maike testified that he did not understand Cherrone to be joking. Maike further testified that as the two began walking to Shultz's house, he pulled his shirt up over his face because he believed Cherrone was going to "do something" to Shultz to "try to get money from him somehow." [Trial Tr. at 513, 533–37.] The jury obviously drew the inference that Cherrone was not joking about robbing Shultz, and there was ample basis in the record for them to do so.

Cherrone also insists that he did not intend to rob Shultz, and states that there would have been no reason for him to do so because if he had been hungry he could have simply gone to Deskovich's house to get something to eat. [ECF No. 1 at 7.] While such arguments might have been appropriate at trial, they do not entitle Cherrone to federal habeas relief. The role of this Court on habeas review is quite limited, and the Court is not permitted to reweigh the evidence or substitute its judgment for that of the jury. *Jackson*, 443 U.S. at 319. Instead, the question for this Court is whether there is evidence in the record from which a reasonable jury could have found Cherrone guilty of attempted robbery. *Id.* The Court finds the evidence more than sufficient to support the jury's verdict. The state court's rejection of this claim was not unreasonable and, accordingly, the claim is denied.

## C. Ineffective Assistance of Counsel

Cherrone next claims that his trial counsel was ineffective because he did not request an instruction on the lesser-included offense of voluntary manslaughter and otherwise failed to pursue a defense of "sudden heat." [ECF No. 1 at 8.] The state argues that this claim has been procedural defaulted. [ECF No. 12 at 15.] The Court agrees. Although Cherrone raised an ineffective assistance of counsel claim on this ground in his post-conviction petition, he did not file an appeal after the trial court denied his petition. [*See* ECF No. 1-1 at 16–17.] The time for filing an appeal has long since passed. See Ind. App. R. 9(A) (appeal is to be filed within 30 days of trial court's judgment). Because Cherrone did not present this claim in one complete round of state review, the claim is procedurally defaulted. *Baldwin*, 541 U.S. at 30–31.

In his traverse, Cherrone asserts that his procedural default should be excused because his "efforts to file an appeal through every level of the state court process [were] subverted by state officials." [ECF No. 28-1 at 5.] He does not elaborate, however, and there is nothing in the record to suggest that he was prevented from filing an appeal by state officials or anyone else. Cherrone also asserts that his procedural default should be excused because he was proceeding pro se and did not know how to appeal, but as stated above, a petitioner's pro se status, youth, or ignorance of the law does not establish cause to excuse a procedural default. *Smith*, 598 F.3d at 385; *Harris*, 334 F.3d at 669. Moreover, the record belies Cherrone's assertion that he did not know how to file an appeal. He filed a pro se appeal of the trial court's discovery rulings in the post-conviction proceedings, even preparing an appellate brief on his own behalf. [*See* ECF Nos.

11-7, 11-8.] For these reasons, Cherrone has not provided grounds for excusing his procedural default, and so the Court does not reach this claim on the merits.

**D. Appropriateness of Sentence**

In his final claim, Cherrone asserts that the trial court abused its discretion in imposing a sentence of 65 years. [ECF No. 1 at 10.] He asserts that the court improperly weighed the mitigating and aggravating factors under Indiana law, and did not adequately consider his age at the time of the offense. [*Id.*] Once again, Cherrone's claim is premised on state law, and federal habeas relief cannot be granted for violations of state law. *Estelle*, 502 U.S. 67–68. Accordingly, Cherrone's claim is not cognizable in this proceeding.

In his traverse, Cherrone suggests that his sentence also violated federal due process principles. [ECF No. 28-1 at 10–11.] This is not the same claim he raised in his Petition, but even if the Petition can be read to assert a cognizable federal claim, Cherrone did not exhaust any such claim in the state proceedings. Although he raised a claim pertaining to his sentence on direct appeal, that claim was based entirely on state law. [*See* ECF No. 11-3 at 24–26.] Because Cherrone did not alert the state court to the federal nature of this claim, the claim is procedurally defaulted. *Baldwin*, 541 U.S. at 33; *Boerckel*, 526 U.S. at 853–54. To the extent Cherrone is again asserting his pro se status or lack of knowledge of the law as a basis to excuse his procedural default, that argument fails for the reasons already stated.

### E. Certificate of Appealability

As a final matter, the Court must consider whether to grant Cherrone a certificate of appealability. 28 U.S.C. § 2253(c); Rule 11 of the Rules Governing Section 2254 Cases. To obtain a certificate of appealability, the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons fully articulated above, Cherrone has not shown that reasonable jurists could debate the correctness of this Court's resolution of his Petition. Accordingly, the Court declines to issue a certificate of appealability.

## CONCLUSION

For the reasons set forth above, the Court **DENIES** the Petition [ECF No. 1] and **DECLINES** to issue a certificate of appealability.

SO ORDERED on April 21, 2011.

      s/ Theresa L. Springmann
      THERESA L. SPRINGMANN
      UNITED STATES DISTRICT COURT
      FORT WAYNE DIVISION